**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
CWO-2 DARIUS BORS,            )
                              )
        Plaintiff,            )
                              )
        v.                    )     Civil Action No. 09-84 (RWR)
                              )
ADMIRAL THAD W. ALLEN et al., )
                              )
        Defendants.           )
_____)
```

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Darius Bors, a Chief Warrant Officer in the United States Coast Guard ("USCG"), brings this action against various defendants including the Commandant of the USCG to challenge his discharge. Bors seeks an injunction[1] preventing the USCG from discharging him from service on April 16, 2009. Because Bors has not shown a likelihood of success on the merits and the circumstances do not otherwise warrant granting Bors relief, his motion will be denied.[2]

---

[1] While Bors styles the relief he requests a "temporary restraining order pendente lite," it appears that Bors is actually seeking a preliminary injunction, because a TRO expires no more than ten days after it is entered, and Bors seeks an order preventing the defendants from discharging him during the duration of litigation. <u>See</u> Fed. R. Civ. P. 65(b)(2).

[2] Neither party requested a hearing on this motion, and the parties do not present the type of factual disputes that would require a hearing. A court may deny a plaintiff's application for a preliminary injunction without first providing a hearing on the merits when the record demonstrates a lack of right to relief. <u>Cornish v. Dudas</u>, 540 F. Supp. 2d 61, 64 (D.D.C. 2008) (citing <u>Smith v. Harvey</u>, Civil Action No. 06-1117 (RWR), 2006 WL

-2-

BACKGROUND

Bors served as an enlisted member of the USCG from March 6, 1990 through June 1, 2007.  (Compl. ¶ 5.)  In 2007, Bors was offered an appointment as a permanent regular Chief Warrant Officer.  Bors accepted the offer on June 1, 2007.  (Compl. ¶ 6.) That December, while he was on an approved leave from duty, Bors went to a medical clinic to fill a prescription.  While he was in the treatment room, a medical corpsman and a Lieutenant Commander questioned Bors about alcohol consumption and accused him of being drunk on duty.  (Compl. ¶¶ 11-12.)  Bors denied that he was drunk and denied consuming alcohol.  However, he provided a blood sample to the medical corpsman and the Lieutenant Commander that revealed that he had recently consumed alcohol.  (Compl. ¶¶ 12-13.)  Bors was charged with three violations of the Uniform Code of Military Justice ("UCMJ"): one count of making a false statement to a Lieutenant Commander in violation of Article 107; one count of being drunk while on duty in violation of Article 112; and one count of destroying military property in violation of Article 108.  (Compl. ¶ 13.)  After an investigation, the charges alleging violations of Articles 108 and 112 were dropped, while a charge alleging that Bors violated Article 92 of the UCMJ by failing to obey a lawful order was

---

2025026, at *2 (D.D.C. July 17, 2006)); Local Civil Rule 65.1(d) (a court may decide a motion for preliminary injunction on the papers before holding a hearing)).

-3-

added.  The charge alleging a violation of Article 92 was based
upon the fact that Bors had previously been ordered to refrain
from consuming alcohol, as part of a treatment and aftercare
plan.  (Compl. ¶¶ 15-16.)

Bors did not invoke his right to be tried by court-martial.
Rather, he agreed to engage in "non-judicial punishment" under
Article 15 of the UCMJ, namely, a hearing before his Commander.
(Compl. ¶ 17.)  At the Article 15 hearing, the Commander
dismissed the charge against Bors under Article 92, but found by
a preponderance of the evidence that Bors violated Article 107 by
making a false official statement to the medical officer and a
senior officer.  Bors was awarded a Letter of Admonition and a
"30-day restriction," which was suspended for six months.
(Compl. ¶ 18.)

The results of the Article 15 hearing were forwarded to the
Commandant Guard Personnel Command ("CGPC").  Bors' Commanding
Officer, Captain R.R. O'Brien, recommended terminating Bors'
appointment as Chief Warrant Officer for "unsuitability due to
repeated violations of his alcohol aftercare program and
associated violation of the UCMJ."  (Compl. ¶ 20; Defs.' Opp'n to
Pl.'s Mot. for TRO in Form of a Stay Pendente Lite ("Defs.'
Opp'n") at 3.)  Captain O'Brien explained:

> CWO Bors was determined to be alcohol dependent on
> two separate occasions after self-referring for alcohol
> abuse twice.  He was required to abstain from drinking
> indefinitely as a condition of his aftercare plan.

-4-

Following the second diagnosis, [Bors] was questioned
about his drinking on numerous occasions due to the
smell of alcohol apparently emanating from him and his
suspect behavior while on duty.  In each case he denied
drinking alcohol.  While on leave but in the Sector New
York clinic, he was again confronted regarding the
apparent odor of alcohol.  The medical officer,
concerned about CWO Bors well being, ordered a blood
test to determine his alcohol consumption level despite
CWO Bors' repeated denials of drinking.  Contrary to
his denials, which amounted to false official
statements, CWO Bors was found to have consumed alcohol
and later admitted to drinking the night prior to the
blood test.  A UCMJ action, limited to the specific
events of Dec. 18, 2007, was taken against CWO Bors.  A
further review of the member's record shows a pattern
of behavior which is inconsistent with that demanded of
a chief warrant officer. . . .  Having previously been
found to be dependent on alcohol and having twice
failed to adhere to counseling and prescribed aftercare
treatment (i.e. abstention from alcohol consumption
indefinitely) CWO Bors is subject to separation in
accordance with reference (a) Chapter 20.B.2.1. [of the
USCG Personnel Manual].

(Pl.'s Mem. in Supp. of Pl.'s Mot. for TRO in Form of a Stay

Pendente Lite ("Pl.'s Mem."), Ex. 5[3] at 1-2.)  The USCG convened

a Special Board, consisting of a panel of three officers who

reviewed Captain O'Brien's recommendation to terminate Bors'

warrant officer appointment under Article 12.A.20[4] of the USCG

---

[3] References to plaintiff's exhibits correspond to how they
are numbered on this court's electronic docket, rather than to
how the plaintiff has designated them on his filing.

[4] Article 12.A.20 provides:
    The Secretary may terminate the appointment of a
chief warrant officer of the Regular Coast Guard at any
time within three years after the date he or she
accepted the original appointment as chief warrant
officer.  A chief warrant officer whose appointment is
terminated under this Article is not entitled to
severance pay but may apply to the Commandant to

Personnel Manual.  (See Pl.'s Mem. Ex. 7 at 1-2.)  The Special
Board sent a Report to the Secretary of the United States
Department of Homeland Security, Michael Chertoff, recommending
terminating Bors' appointment as a Chief Warrant Officer.  (See
Pl.'s Mem. Ex. 8 at 1-2.)  The Special Board stated that Bors'
violation of Article 107 combined with an alcohol related
incident that occurred in 2006, "cast doubt on [Bors'] integrity
and moral qualifications.  [Bors] demonstrated a significant
breech [sic] of Coast Guard's Core Values by making false
statements and [failing] to adhere to the policies and provisions
of Article 20.B of the Personnel Manual."  (Id. at 4-5.)  The
Special Board further recommended a "full and careful review of
the record and Article 20.B of the Personnel Manual" if Bors were
to apply for reenlistment.  (Id. at 5.)

Secretary Chertoff approved the Special Board's
recommendation.  (See Pl.'s Mem. Ex. 9.)  Commander James E.
Andrews wrote to Bors informing him of the decision and
explaining that:

> In accordance with [10 U.S.C. § 1165], a warrant
> officer who is separated is entitled, if eligible, to
> separation pay under [10 U.S.C. § 1174].  [Title 10 of
> the U.S. Code] authorizes an opportunity to request to

---

> reenlist (10 U.S.C. § 1165).  If approved, he or she
> reenlists in a grade the Commandant directs but not in
> one lower than the rate he or she held immediately
> before appointment as a chief warrant officer (10
> U.S.C. § 515).  The procedures described in Article
> 12.A.11.b apply.

-6-

reenlist under Section 515, however the nature of your
circumstances, relative to Chapter 20 of [the USCG
Personnel Manual] precludes your retention on further
active duty.  Accordingly, you will be discharged from
the Coast Guard.

(Compl. ¶ 23; Pl.'s Mem. Ex. 10 at 1.)  Bors was notified that he

would be discharged from the USCG on January 19, 2009.  (See

Pl.'s Mem. Ex. 12 ("Bors Aff.") at 1-2.)

On January 14, 2009, Bors filed his complaint in this case,

along with a motion for a temporary restraining order ("TRO")

seeking an order that would prevent the USCG from discharging him

on January 19, 2009.  That day, the USCG agreed not to discharge

Bors until at least 90 days after the date on which he received

transition assistance counseling, and Bors agreed to withdraw his

motion for a TRO.  In addition, the defendants agreed to allow

Bors to request reenlistment in accordance with 10 U.S.C. § 515.

(See Notice of TRO Resolution, Docket Entry # 5, January 16,

2009.)  On February 13, 2009, Bors requested reenlistment at the

grade he held prior to his appointment as Chief Warrant Officer.

Bors' request was denied by the Chief of Enlisted Personnel.

(See Defs.' Opp'n at 6.)

On April 7, 2009, Bors filed the instant motion for an order

preventing the defendants from discharging him on April 16, 2009.

Bors argues that the defendants' denial of his request for re-

enlistment entitled him to a "reenlistment board under the

provision of the Coast Guard Personnel Manual, . . . Chapter 12,"

and that if the basis for the denial of his reenlistment is the "failure of alcohol rehabilitation," then Bors is entitled to a "separation board." (Pl.'s Mem. at 9.)  The defendants oppose, arguing that Bors cannot show irreparable harm because Bors will receive more than $84,000 in separation pay and can be reinstated with back pay if the USCG loses the case, and because Bors is not likely to win on the merits of his claim because USCG's discharge of Bors is proper under 10 U.S.C. § 1165 and the implementing regulations in the USCG Personnel Manual.  (Defs.' Opp'n at 1.)

## DISCUSSION

A preliminary injunction is an "extraordinary" remedy. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  A preliminary injunction preventing the government from terminating federal service should be limited to "genuinely extraordinary situation[s]."  Sampson v. Murray, 415 U.S. 61, 90 (1974).  A plaintiff carries the burden of persuasion by a clear showing 1) of a substantial likelihood of success on the merits, 2) of irreparable injury if the injunction is not granted, 3) that the injunction would not substantially injure another interested party, and 4) that the injunction is in the public interest. Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004).  While in general a court should not review internal military affairs if a plaintiff has not exhausted all available intraservice corrective measures, "[t]his Circuit does not require exhaustion if pursuit

of an administrative remedy would be futile or if the plaintiff can show irreparable harm." Qualls v. Rumsfeld, 357 F. Supp. 2d 274, 279 (D.D.C. 2005) (citing Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986)). "The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor." In re: Navy Chaplaincy, 516 F. Supp. 2d 119, 122 (D.D.C. 2007) (citing CSX Transp., Inc. v. Williams, 406 F.3d 667 (D.C. Cir. 2005)).

I.   IRREPARABLE INJURY

"Some showing of irreparable harm . . . is a threshold requirement for a preliminary injunction." City of Moundridge v. Exxon Mobil Corp., 429 F. Supp. 2d 117, 127 (D.D.C. 2006). "Irreparable harm is an imminent injury that is both great and certain, and that legal remedies cannot repair." Id. (citing Wis. Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985)).

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

City of Moundridge, 429 F. Supp. 2d at 127-128 (quoting Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958); Davenport v. Int'l Bhd. of Teamsters, 166 F.3d

356, 367 (D.C. Cir. 1999)). Monetary injuries, however
substantial, do not constitute irreparable harm. Nat'l Propane
Gas Ass'n v. United States Dep't of Homeland Sec., 534 F. Supp.
2d 16, 19 (D.D.C. 2008) (quoting Wis. Gas Co., 758 F.2d at 674).
When a plaintiff requests an injunction preventing a military
discharge, some courts have determined that the plaintiff must
make a "much stronger showing of irreparable harm than the
ordinary standard for injunctive relief," due to the "magnitude
of the interests weighing against judicial interference with the
internal affairs of the armed forces."  Veitch v. Danzig, 135 F.
Supp. 2d 32, 37 (D.D.C. 2001) (finding that a U.S. Navy
chaplain's alleged loss of salary and benefits and damage to
professional reputation did not constitute irreparable injury);
Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir. 1985);
Sebra v. Neville, 801 F.2d 1135, 1141 (9th Cir. 1986) ("[T]he
test for injunctive relief is much more stringent for a
government military employee than the normal test for
injunction."); Guerra v. Scruggs, 942 F.2d 270, 274 (4th Cir.
1991) (reversing a district court's decision granting a
preliminary injunction prohibiting the plaintiff's discharge,
stating "[w]e believe that . . . [a] higher requirement of
irreparable injury should be applied in the military context
given the federal courts' traditional reluctance to interfere
with military matters").

-10-

Bors argues that he will suffer irreparable injury if the defendants are allowed to complete his discharge.  He claims that if he is forced to pursue the full course of litigation, he will be required to exhaust his administrative remedies by filing a petition before the USCG Board for Correction of Military Records, which might not involve a hearing before a Board as he requests here, and would place the burden of proof on Bors, instead of on the defendants.  (Pl.'s Mem. at 18-19.)  Bors' argument presumes that the right to an administrative discharge board that enlisted members with at least eight years of service receive applies to him.  Because he was a Chief Warrant Officer, it does not, as is more fully discussed below.  In addition, the defendants assert and Bors does not dispute that Bors will receive more than $84,000 in separation pay, and if he were to be successful on the merits, would be reinstated and receive back pay.  (Defs.' Opp'n at 10.)  Since "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm[,]"  Wis. Gas Co., 758 F.2d at 674, Bors has not shown that he will suffer irreparable injury if his motion for an injunction is denied.

II.  SUCCESS ON THE MERITS

    If a movant has no likelihood of success on the merits, inquiry into the remaining factors is unnecessary, for the

-11-

injunctive relief should be denied on that basis.  See Trudeau v.
Federal Trade Comm'n, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006).  To
show that interference into the personnel decisions of the USCG
is warranted, Bors must make a very compelling case that he was
denied process explicitly given to him by statute, or that the
USCG's decision was arbitrary or capricious.  "The Court's
deference to the military is at its highest 'when the military,
pursuant to its own regulations, effects personnel changes
through the promotion or discharge process.'"  Housman v. Baratz,
916 F. Supp. 23, 28 (D.D.C. 1996) (quoting Dilley v. Alexander,
603 F.2d 914, 920 (D.C. Cir. 1979)).  Judicial review of
personnel decisions of the armed forces is limited to a
determination whether they were arbitrary, capricious or contrary
to the Constitution, statutes, or governing regulations.
Housman, 916 F. Supp. at 28 (citing Blevins v. Orr, 721 F.2d
1419, 1421 (D.C. Cir. 1983)).

     Bors argues that he is likely to succeed on the merits
because the defendants failed to provide him the process he was
entitled to under relevant statutes and the USCG Personnel
Manual.  While Bors claims that he is not making "a facial
challenge to [Secretary Chertoff's] discretionary decision to
terminate [Bors'] appointment as a Warrant Officer," he alleges
that his discharge violated "Federal case law, due process, and
Coast Guard regulations" because he was not given "any form of

-12-

due process or right to a Board or hearing." (Pl.'s Mem. at 9-10.) Bors alleges that information that was favorable to him, namely a performance evaluation, was withheld from the Special Board that recommended that Secretary Chertoff terminate Bors' appointment. (Id. at 8.) Bors asserts that if defendants are allowed to discharge Bors from service in this manner, an "arbitrary, narrow class of persons . . . - - Warrant officers with less than three years of service as officers" will not receive the benefit of a "Board or hearing" before being discharged, while enlistees with less service time would receive a board or a hearing. (Id. at 11.) Defendants argue that Bors' status as an enlisted member of the USCG, and all the rights and protections that accompany that status, ceased on June 1, 2007, when Bors accepted his appointment to become a Chief Warrant Officer. (Defs.' Opp'n at 2-3.)

Bors does not sufficiently support his assertions that he was denied procedural protections he was entitled to under statute or under the Personnel Manual. First, Bors misreads the applicable statutes when he asserts that he had a dual status as an Officer and an enlisted member of the USCG. Section 1165 of Title 10 of the U.S. Code specifically provides that:

> The Secretary [of the USCG] may terminate the regular appointment of any permanent regular warrant officer at any time within three years after the date when the officer accepted his original permanent appointment as a warrant officer in that component. A warrant officer who is separated under this section is entitled, if

-13-

eligible therefor, to separation pay under section 1174
[10 U.S.C. § 1174] or he **may be enlisted under section
515 of this title** [10 U.S.C. § 515].  If such a warrant
officer is enlisted under section 515 of this title
[10 U.S.C. § 515], he is not entitled to separation
pay.

(Emphasis added.)  Section 515, titled "**Reenlistment** after

discharge as a warrant officer," provides that:

A person who has been discharged from a regular
component of an armed force under section 1165 or 1166
of this title [10 U.S.C. §§ 1165, 1166] may, upon his
request and in the discretion of the Secretary
concerned, be enlisted in that armed force in the grade
prescribed by the Secretary.  However, a person
discharged under section 1165 of this title [10 U.S.C.
§ 1165] may not be enlisted in a grade lower than the
grade that he held immediately before appointment as a
warrant officer.

Thus, the statutory sections clearly imply that a Chief

Warrant Officer who is discharged under 10 U.S.C. § 1165 is no

longer an enlisted member, and may only seek permissive

reenlistment at the discretion of the Secretary of the Department

of Homeland Security.  Bors was allowed to request reenlistment;

his request was denied.

Bors also points out several procedures that he would be

entitled to before separation under Article 12.B of the USCG

Personnel Manual due to his years of service in the USCG, and to

10 U.S.C. § 1176(a), which provides that an enlisted member of

the USCG who is within two years of retirement "shall be retained

on active duty until the member is qualified for retirement."

(See Pl.'s Mem. at 13-14.)  However, neither Article 12.B nor 10

-14-

U.S.C. § 1176(a) apply to Bors; both provisions pertain to enlisted members, a status that Bors gave up in 2007.

Bors does not specify any other provision that would provide him with more process than he was given.  The defendants complied with the procedures outlined in Article 12.A.11.b.: a superior in Bors' chain of command recommended revoking Bors' appointment; the recommending officer granted Bors an opportunity to review the recommendation and comment (see Pl.'s Mem. Ex. 6 ("Special Board Memo.") at ¶ 3; Ex. 5 ("O'Brien Rec.") at 2 (listing "CWO Bors Statement" as an enclosure accompanying his recommendation to the Special Board)); and a panel of senior officers reviewed the recommendation.  Bors simply has not shown any procedural step that he was not granted, or that did not occur before the decision was made to discharge him from the USCG.  Thus, he has not shown a substantial likelihood of success on the merits.

III. HARM TO OTHERS; PUBLIC INTEREST

The balance of the harms and the public interest do not weigh in favor of granting an injunction.  Bors argues that an injunction would only force the defendants to do what they were already required to do.  However, Bors acknowledges that judicial "interference in military personnel decisions [causes] great harm to the military because of the potential cumulative effect of multiple injunctions."  (Pl.'s Mem. at 19-20.)  He has not shown

-15-

that there is any consideration of public interest that would
favor such harm in this case.

### CONCLUSION AND ORDER

Because Bors has not shown that he will suffer irreparable
injury absent his requested injunction, that he is likely to
succeed on the merits of his claim against the defendants, or
that the balance of harms and the public interest weigh in favor
of his proposed injunction, it is hereby

ORDERED that Bors' motion for a preliminary injunction [13]
preventing the defendants from discharging him while this
litigation continues be, and hereby is, DENIED.

SIGNED this 15th of April, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge